**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


JUAN ALEXANDER,                 :
                                        Civil Action No. 06-4088 (RBK)
          Petitioner,           :

     v.                         :       OPINION

UNITED STATES                   :
BUREAU OF PRISONS,
          Respondent.           :
```

**APPEARANCES:**

| | |
|---|---|
| Petitioner pro se<br>Juan Alexander<br>Fairton FCI<br>P.O. Box 420<br>Fairton, NJ 08320 | Counsel for Respondent<br>Paul A. Blaine<br>Asst. U.S. Attorney<br>Camden Federal Building<br>  and U.S. Courthouse<br>401 Market Street<br>P.O. Box 2098<br>Camden, NJ 08101 |

**KUGLER**, District Judge

Petitioner Juan Alexander, a prisoner formerly confined at Fairton Correctional Institution, Fairton, New Jersey, has submitted this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] The sole respondent is the U.S. Bureau of Prisons.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Because it appears from a review of the submissions of the parties that Petitioner is not entitled to issuance of the writ, the Court will deny the Petition.

## I. BACKGROUND

Petitioner was convicted at the age of 20 in the District of Columbia Superior Court of committing first degree theft, armed robbery, and second degree burglary. United States v. Alexander, Case No. F1164-84. He was sentenced on April 1, 1985, under the Federal Youth Corrections Act ("FYCA"), 18 U.S.C. § 5005 et seq.,[2] to a 20 year term of imprisonment.[3] Specifically, Petitioner was sentenced under § 5010(c).

Petitioner demonstrated difficulty with institutional adjustment and behavior while confined. As early as March 1989, corrections officials were considering requesting a "no benefit" finding under § 5010(d). (Answer, Ex. 4A "Recommendation".)

On or about March 3, 1990, while Petitioner was serving his FYCA sentence, he escaped from a community corrections center. By Notice of Action dated March 11, 1992, the D.C. Board of Parole ("DCBOP") rescinded Petitioner's pending grant of parole and set February 18, 1995, as the date for reconsideration.

---

[2] The FYCA was repealed effective October 12, 1984. See Pub. L. 98-473, § 218(a)(8), 98 Stat. 2027. Petitioner's offenses were committed on January 4, 1984.

[3] In 1952, Congress provided that D.C. Code offenders would be eligible for commitment under the FYCA. See U.S. v. Alsbrook, 336 F.Supp. 973, 974 (D. D.C. 1971).

The DCBOP reconsidered Alexander on March 10, 1995, and deferred further reconsideration to January 9, 1997. In the interim, according to records of the Court Services and Offender Supervision Agency for the District of Columbia, Petitioner was resentenced in Case F1164-84 on January 29, 1995. (Answer, Ex. 15.) The DCBOP's Parole Determination Record also contains a notation, dated July 17, 1995, that Petitioner had incurred an FYCA "No Benefit" determination. (Answer, Ex. 4 at 1, 5; Ex 5.) A Program Review record of the District of Columbia Department of Corrections, dated December 9, 1996, reflects that Petitioner was transferred from the Youth Center to a medium security adult facility on July 18, 1995. (Supplemental Answer, Ex. 2 "Summary of Institutional History/Program Participation Prior to Transfer to Current Facility".)

As of January 9, 1997, Petitioner's full-term date was February 10, 2005, as adjusted for the time spent on "escape" status. On January 28, 1997, the DCBOP ordered that Petitioner be released on parole on March 26, 1997, to remain under supervision until February 10, 2005.

By Notice of Board Order dated December 29, 1998, the DCBOP revoked Petitioner's parole for non-criminal behavior and ordered consideration of reparole by December 1, 1999. (Answer, Ex. 7.)[4]

---

[4] Petitioner then came under the jurisdiction of the United States Parole Commission ("USPC") and its regulations and guidelines, upon the enactment of the National Capital

The United States Parole Commission released Petitioner to supervision on November 10, 2001, with parole to expire on November 23, 2006.  (Answer, Ex. 9.)  Thus, Petitioner was not given credit for his "street time" during the previous grant of parole.

By Notice of Action dated April 17, 2003, the USPC revoked parole and order that no time on parole shall be credited. Reparole after service of eight months was ordered, effective November 14, 2003.  (Answer, Ex. 10.)

Petitioner was released on parole again on November 14, 2003, to remain under supervision through December 26, 2007. (Answer, Ex. 11.)  Parole was revoked on August 24, 2004, with reparole to be effective on March 21, 2005, after service of eight months.  Again, none of the time spent on parole was credited to Petitioner's sentence.  (Answer, Ex. 12.)

Petitioner was reparoled again on March 21, 2005, to remain under supervision through September 1, 2008.  (Answer, Ex. 13.) Parole was revoked on March 7, 2006 with reparole scheduled for October 20, 2006, after the service of 14 months.  (Answer, Ex. 14.)  Petitioner was scheduled to be released on reparole on

---

Revitalization and Self-Government Improvement Act of 1997, Pub. L. 105-33, § 11231(a)(1), 111 Stat. 712, 745; D.C. Code § 24-131 (formerly § 24-1231).  See 28 C.F.R. § 2.70 et seq.

4

October 20, 2006, to remain under supervision through February 10, 2009.[5]  (Supplemental Answer, Ex. 3.)

Petitioner has filed this Petition for Writ of Habeas Corpus, contending that the USPC has improperly failed to credit him with time spent on parole, in violation of the Federal Youth Corrections Act.  In addition, without identifying the statutes or regulations which he challenges, Petitioner contends that the application to him of any rule or law enacted after 1985 is a violation of the Ex Post Facto Clause.  Respondent has answered that the failure to credit street time is proper, in light of the "No Benefit" finding, and that the rules applied to Petitioner regarding the calculation of his sentence pre-date the commission of his offense.  Petitioner has not filed a reply in support of the Petition or otherwise contested the record provided by Respondent.[6]

---

[5] In its Supplemental Answer, Petitioner supplied a copy of a Certificate of Parole that is not executed.  Petitioner has not advised this Court of any change of address.  Thus, it is not clear at this time whether Petitioner has been reparoled or is confined.  In any event, the Petition is not moot, and this Court will determine the merits.

[6] Pursuant to 28 U.S.C. § 2243, "The applicant or the person detained may, under oath, deny any of the facts set forth in the return or allege any other material facts."  Pursuant to 28 U.S.C. § 2248, "The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."

## II. ANALYSIS

As noted above, Petitioner was sentenced pursuant to 18 U.S.C. § 5010(c), a provision of the Federal Youth Corrections Act:

> (c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017(d) of this chapter.

Release of prisoners sentenced under § 5010(c) is governed by § 5017(d):

> (d) A youth offender committed under section 5010(c) of this chapter shall be released conditionally under supervision not later than two years before the expiration of the term imposed by the court. He may be discharged unconditionally at the expiration of not less than one year from the date of his conditional release. He shall be discharged unconditionally on or before the expiration of the maximum sentence imposed, computed uninterruptedly from the date of conviction.

18 U.S.C. § 5017(d) (repealed).

> The Act was thus designed to provide a better method for treating young offenders convicted in federal courts in that vulnerable age bracket, to rehabilitate them and restore normal behavior patterns.
>
> ...
>
> The objective of these options represented a departure from traditional sentencing, and focused primarily on correction and rehabilitation. All persons under 22 years of age at the time of conviction were made eligible for probation or treatment under the

> Act, the latter defined as "corrective and preventive guidance and training designed to protect the public by correcting (their) antisocial tendencies."  18 U.S.C. §§ 5006(e) and (g). ...
>
> An important element of the program was that once a person was committed for treatment under the Act, the execution of sentence was to fit the person, not the crime for which he was convicted. ... An integral part of the treatment program was the segregation of the committed [youth offenders], insofar as practicable, so as to place them with those similarly committed, to avoid the influence of association with the more hardened inmates serving traditional criminal sentences.  18 U.S.C. § 5011.

Dorxzynski v. United States, 418 U.S. 424, 433-34 (1974) (citation and footnote omitted).

Subsection (d) of § 5010 provides, however, that "If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision."  A "no benefit" finding under subsection (d) must be explicit on the record, although supporting reasons need not be set forth on the record.  See Dorszynski, 418 U.S. at 441-44.

The Supreme Court has held that a court imposing a consecutive adult sentence on an offender serving an FYCA sentence, who commits a subsequent crime, may make a "no benefit" finding and terminate FYCA treatment on the first sentence, requiring that the youthful offender complete his original FYCA sentence in an adult facility.  Ralston v. Robinson, 454 U.S. 201

7

(1981), reh'g denied, 455 U.S. 929 (1982).  Speaking more broadly than required by the facts of the case, the Court stated:

> We do not read [the language of §§ 5010 and 5011] as requiring the judge to make an irrevocable determination of segregation or treatment needs, or as precluding a subsequent judge from redetermining those needs in light of intervening events.

Ralston, 454 U.S. at 211 (emphasis in original).  Following this broad language, some lower federal courts have held that a sentencing court may revisit a § 5010(c) FYCA sentence and make a "no benefit" or "no further benefit" finding, years after sentencing, based upon the youthful offender's non-criminal conduct while serving the FYCA sentence or based upon non-criminal conduct resulting in the revocation of parole.  See United States v. Jackson, 681 F.Supp. 295 (D. Md. 1988) (collecting cases).  Contra United States v. Davison, 856 F.2d 1289 (9th Cir. 1988) (court may revisit FYCA sentence only upon subsequent conviction).

Here, Respondent has not been able to obtain a complete file of Petitioner's criminal case.  The partial file obtained reflects only the original judgment under § 5010(c).  (Suppl. Answer, Ex. 1.)  It is apparent from other records, however, that the sentencing court made a "no benefit" finding and terminated Petitioner's treatment as a youthful offender in 1995.[7]

---

[7] Although Petitioner asserted in the Petition that he was sentenced under the Federal Youth Corrections Act, he has not submitted any reply challenging Respondent's assertion that the

Accordingly, after 1995, it was appropriate to calculate Petitioner's sentence based upon rules applicable to adult D.C. Code offenders.  See, e.g., Lewis v. Attorney General, 878 F.2d 714 (3d Cir. 1989) (where federal youthful offender is sentenced for subsequent crime, and second sentencing court makes "no further benefit" determination resulting in treatment as adult offender on remainder of original FYCA sentence, inmate is entitled to incur good time credits for period from transformation of FYCA sentence to adult sentence).  Thus, although D.C. Code offenders sentenced under the FYCA are not subject to forfeiture of time on parole, see 28 C.F.R. § 2.105(e), an adult D.C. Code offender such as Petitioner, whose parole is revoked, "shall receive no credit toward his sentence for time spent on parole," 28 C.F.R. § 2.105(d).  Contrary to Petitioner's allegation that application of § 2.105(d) to him violates the Ex Post Facto Clause, the prohibition against credit for street time for adult offenders has long been the rule for District of Columbia offenders.  See Noble v. U.S. Parole Commission, 194 F.3d 152, 154 (D.C. Cir. 1999); Arrington v. McGruder, 490 F.2d 795 (D.C. Cir. 1974); Bates v. Rivers, 323 F.2d 311 (D.C. Cir. 1963).

---

sentence was later transformed by a "no further benefit" finding or challenging the exhibits reflecting that 1995 finding.

The DCBOP and USPC correctly refused to award Petitioner credit for time spent on parole after 1995.  As Petitioner does not otherwise challenge the calculation of his sentence, the Petition must be denied.

### III.  CONCLUSION

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.

S/Robert B. Kugler  
Robert B. Kugler  
United States District Judge

Dated: May 4, 2007